IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


KEITH WATSON,

        Plaintiff,

vs.                                                                    No. CIV 07-0689 WDS

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

        Defendant.


**MEMORANDUM OPINION AND ORDER**

        **THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for benefits. The Court, having considered Plaintiff's Motion and Memorandum Brief [docket #15], Defendant's Response [docket #18], Plaintiff's Reply [docket #19], the administrative record and applicable law, recommends that Plaintiff's Motion be **GRANTED,** and that this matter be remanded to the Commissioner of Social Security for further proceedings consistent with the Memorandum Opinion and Order.

**I.  Background**

        Plaintiff, who was born on December 22, 1975, worked as a package handler, truck wash attendant, and telemarketer before the onset of his alleged disability. Tr. 86. Plaintiff applied for benefits on August 1, 2005. Tr. 13. He alleged that he became disabled on May 1, 2002. Tr. 13. Plaintiff alleged that he was disabled as a result of depression, anxiety, manic depressive disorder, and anger issues. Tr. 112-113. Plaintiff's application was denied at the initial level, Tr. 22, and at the reconsideration level. Tr. 23. Plaintiff appealed by filing a request for a hearing by an

administrative law judge ("ALJ") on November 10, 2005.

A hearing was held on May 2, 2006, before ALJ Betty Barbeito, who heard testimony from Plaintiff and limited testimony from a vocational expert[1]. Tr. 276-313. The ALJ used the Medical-Vocational Rules as a framework to find that the Plaintiff was not disabled, and she entered a decision finding him not disabled. Tr. 10-20. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner, from which Plaintiff now appeals. Tr. 5-7.

Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, [docket # 4, 7] this case was assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla,

---

[1]The vocational expert offered testimony regarding Plaintiff's previous employment. He did not testify regarding Plaintiff's prospective employment because the ALJ had been advised that she would be receiving additional medical documentation subsequent to the administrative hearing. Tr. 307.

but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 15. The ALJ found at step two that Plaintiff had the severe impairments of Hepatitis C, major depression, adjustment disorder with mixed anxiety and depressed mood, and bipolar disorder. Tr. 15. The ALJ found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any of the Listings. Tr. 15-16. At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform simple, unskilled work through the medium level of exertion with mild limitations in activities of daily living, mild limitations in his capacity for appropriate social functioning and moderate limitations in maintaining concentration, persistence, or pace. Tr. 19. Given the RFC assessment, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 19. At step five, the ALJ used the Medical-Vocational Rules as a framework to find that the Plaintiff was not disabled. Tr. 19.

Plaintiff alleges the following errors: the ALJ's application of the grids was contrary to law; the ALJ's finding that Plaintiff could perform simple work was erroneous; and the ALJ's credibility finding was unsupported by substantial evidence and was contrary to law.

### IV. Discussion

**1. Was the ALJ's Application of the Grids Contrary to Law?**

Use of the grids is precluded "unless the claimant's RFC precisely matches the RFC specified for the grid relied upon." *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004). As a general rule, the grids may not be applied conclusively if the claimant has nonexertional impairments that prevent him from performing "most" (i.e., a "substantial majority") of the jobs within a particular exertional category. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Where a

claimant suffers from nonexertional impairments, or a combination of exertional and nonexertional impairments, that prevent him from performing most of the jobs at a particular exertional level, the grids may be used only as a guide or framework, and the Commissioner must prove through expert vocational testimony that jobs exist in the national economy which the claimant can perform. *Id*. at 1488, 1491-92; see also *Channel v. Heckler*, 747 F.2d 577, 579-83 (10th Cir. 1984). But the grids may be applied if a claimant's nonexertional limitations do not further limit his ability to perform work at the applicable exertional level. *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

The ALJ stated in her decision that she was only using the grids as a "framework." Tr. 19-20. However, the ALJ did not develop any vocational testimony, and the Court agrees with Plaintiff that the ALJ in fact applied the grids conclusively to "direct" a finding of "not disabled." *See Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524, n.4 (1st Cir. 1989)("Despite what might be suggested by use of the word 'framework,' whenever an ALJ fails to take vocational testimony, he must be deemed in reality to have relied exclusively on the grid[s] to show the existence of jobs claimant could perform."). The ALJ also made the findings that must be made in order to apply the grids conclusively (i.e., she found that Plaintiff's nonexertional limitations had "little or no effect on his occupational base of unskilled medium work." Tr. 19).

Defendant responds by noting that nonexertional limitations that do not have a significant effect on an occupation base do not preclude reliance on the Grids as a framework for decision-making**,** directing the Court's attention to *Musgrove v. Callahan,* No. 96-5217, 1997 WL 446906, 1997 U.S. App. LEXIS 21031 (10th Cir. Okla. 1997). The claimant in *Musgrove*, who had cardiac issues, was found to have an RFC for a full range of  sedentary work, with an environmental limitation regarding extreme temperatures. The ALJ took no testimony from a vocational expert. Purporting to use the grid only as a nondispositive "framework for decision making," the ALJ held

5

there was a significant number of sedentary jobs plaintiff could perform despite the nonexertional temperature limitation.

The Tenth Circuit affirmed the decision, citing *Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995) for the proposition that while such a nonexertional limitation may preclude use of the grids, it will not if the job base underlying the grid is not significantly reduced.  A significant distinction in *Musgrove*, however, is that in making the finding the ALJ relied on SSA instructional rulings:

> The Secretary's instructional rulings, which are premised on the same vocational sources as the grids, indicate that a temperature restriction like the one imposed here will not have a significant effect on the unskilled sedentary job base. See SSR 96-9p, 1996 WL 374185, at *9 ("Few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. . . . Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base."); cf. SSR 83-14, 1983 WL 31254, at * 4 (citing exclusion of outdoor jobs from sedentary occupational base, due to allergy, as example of vocationally insignificant environmental restriction). Thus, the sedentary-work grid relied on by the ALJ provided a proper basis for disposition of the case.

*Id*.  Defendant has not cited instructional rulings that are relevant to Plaintiff's RFC.  A nonexertional impairment can have a negligible effect on the range of jobs available, 43 Fed. Reg. at 55,358 (1978), *see Channel v. Heckler*, 747 F.2d 577, 582 n.6 (10th Cir. 1984) but the ALJ must back such a finding of negligible effect with the evidence to substantiate it.  *Talbot v. Heckler*, 814 F.2d 1456, 1465 (10th Cir. Okla. 1987).  That evidence is not present here.  Accordingly, this matter will be remanded so these questions may be posed to a vocational expert.

 **2.  Was the ALJ's Finding that Claimant Could Perform Simple Work Erroneous?**

In view of the finding above, this argument is moot as this matter is being remanded for further proceedings involving a vocational expert.

**3. Was the ALJ's Credibility Finding Unsupported by Substantial Evidence and Contrary to Law?**

Plaintiff next argues that the ALJ's credibility findings were not supported by substantial evidence, suggesting that the ALJ merely reviewed the evidence but did not tie any portions of the evidence to her conclusion. This argument is not well taken. Credibility determinations are peculiarly the province of the finder of fact, and are upheld when supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints, and explain why if he concludes those complaints are not credible. *See id.*; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (1996)(stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision"). This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ cited significant evidence that did not support Plaintiff's allegations of total disability during the period at issue. Dr. Wynne, for example, reported that Plaintiff had an affect that was open and congruent with a dysthmic[2] mood. His hygiene and grooming were appropriate, he successfully performed several tasks such as carrying out a written three-part set of directions. His judgment was unimpaired. He could read and understand basic written instructions, was unimpaired in his ability to persist at simple work tasks, could interact well with the general public and co-workers and would have little difficulty getting along with supervisors and adapting to changes in the workplace. Tr. 18. Additionally, the records of First Choice Community Healthcare

---

[2]Dysthymia is a chronic mood disorder that falls within the depression spectrum, the opposite of hyperthymia. It is considered a chronic depression, but with less severity than major depressive disorder.

showed that while Plaintiff had complaints of mood swings and depression, he was feeling better and had no problems once he got back on his medications. Tr. 18. The ALJ also appropriately considered Plaintiff's activities of daily living and the importance of his staying on medication. Tr. 19. The ALJ followed *Kepler* and the credibility evaluation was supported by substantial evidence, and the Court will not disturb it.

## V.  Conclusion

The Court recommends that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket #18 ] be **GRANTED,** and that this matter be remanded to the Commissioner of Social Security for further proceedings consistent with the Memorandum Opinion and Order.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**